## SHERWOOD DISTILLING COMPANY *v.* HEAT & POWER CORPORATION

[No. 87, October Term, 1950.]

*Decided February 9, 1951.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*William Hoffenberg*, with whom was *L. Awalt Weller* on the brief, for the appellant.

*D. Eugene Walsh* and *Milton I. Vogelhut,* with whom were *Foster H. Fanseen* and *Charles O. Fisher* on the brief, for the appellee.

MARBURY, C. J., delivered the opinion of the Court.

This is a suit at law brought in the Circuit Court for Carroll County by the appellee against the appellant. The declaration contains two counts, one the common count for work done and materials provided, and the other a special count on an agreement to furnish and install a boiler and other equipment at the plant of the appellant, near Westminster, for the sum of $52,911, and a refusal to pay a balance due of $8,115.78. A bill of particulars was filed, exceptions were filed to it, which were overruled, then a demurrer was filed, which was also overruled, general issue pleas were filed, and the case was heard before the court sitting without a jury. A judgment was entered for the plaintiff for $14,891.90, and thereupon the defendant appealed.

The first question raised is the ruling of the trial court on the demurrer. It is contended that the second count in the declaration, which is the one on the special contract, is amplified by the bill of particulars to include a claim arising out of a promissory note, and that recovery on this note rests upon an independent and entirely different cause of action. It is therefore argued that this second count is bad for duplicity because it contains two distinct causes of action. *Power v. Allied Asphalt Products Corporation,* 162 Md. 175, 183, 159 A. 251. An examination of the bill of particulars with respect to this note shows that it states that when Sherwood was in arrears in the approximate amount of $32,000, the Heat & Power Corporation requested immediate payment, and that the two presidents of the two corporations went to the Equitable Trust Company of Baltimore, where a note was executed in the amount of $25,000, signed by Sherwood and endorsed by its president personally. The president of the Heat & Power Corporation also endorsed the note for discount purposes.

When this note became due, it was reduced by $5,000, and a new note executed for $20,000. When the $20,000 note became due, the president of Sherwood refused to pay it, but finally paid $10,000, and the president of the Heat & Power Corporation paid the other $10,000 with the understanding that the note would be destroyed, and the Heat & Power Corporation would continue to be the creditor of Sherwood in the amount of $10,000, for the default of payment on this note.

As thus stated in the bill of particulars, the suit is not on the note, but is for the balance due on the contract, and the explanation about the note is presumably intended to show that of the $32,000 claimed to be due when the note was given, $10,000 still remains unpaid. On the face of the pleadings, therefore, there are not two causes of action, although, as we will hereafter show, the evidence does not support the statements made in the bill of particulars. The demurrer must be decided on the allegations made in the pleadings, and, therefore, we think the court was correct in not sustaining it.

The trial court reached its conclusion on the amount of the judgment in the following manner:

| | | |
|---|---|---|
| "Amount due under contract.. | $54,685.83 | |
| Credit allowed by Court.... | 3,000.00 | $51,685.83 |
| | | |
| Amount due for extras .... | $14,316.00 | |
| Extras disallowed ......... | 4,109.93 | 10,206.07 |
| | | " |
| Total ....................... | | 61,891.90 |

Amounts paid on account:

| | | |
|---|---|---|
| August 27, 1946 ........ | $15,000.00 | |
| October 23, 1946 ........ | 22,000.00 | |
| December 21, 1946 ...... | 15,000.00 | |
| February 6, 1947 ........ | 5,000.00 | $57,000.00 |
| | | " |
| Balance due ....................... | | $ 4,891.90 |

```
To which must be added the $10,000 be-
    ing the amount paid on June 25, 1947,
    by the plaintiff company to Equitable
    Trust Company on the note of $25,000.-
    00 dated January 16, 1947 .......... $10,000.00
Amount determined by the Court to be
    due .............................. $14,891.90"
```

In reviewing a judgment entered by a court sitting without a jury, we consider not only the rulings upon the law, but also the evidence, and may affirm, reverse, modify, or remand, as in equity appeals. However, by our General Rules of Practice and Procedure, Part Three, Rules Applicable to Law Only III, Trials, Rule 9(c), Annotated Code, 1947 Supplement, p. 2053, the method of such review is clearly set out in the following words: "* * * the judgment of the trial court shall not be set aside on the evidence, unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." We call especial attention to this, before considering the evidence, because this case involves almost nothing but factual conclusions, and we approach these conclusions in the light of the Rule just quoted.

The largest item of the judgment entered is the $10,000 paid on the note to the Equitable Trust Company by the Heat & Power Corporation. If the evidence showed the facts to be as set out in the bill of particulars with respect to this note, then, of course, this payment on account of the note would merely mean that of the $25,000 originally applied to the indebtedness of Sherwood, $10,000 had to be paid back by the Heat & Power Corporation. While this might be a payment on the note, it would be a failure on the part of Sherwood to pay the entire $25,000 by that amount. However, the proof is quite different from the statement made in the bill of particulars.

The contract was made by proposals in the form of letters. The first of these was dated October 29, 1945.

This was a proposal by the Heat & Power Corporation to Sherwood, which covered the installation of a new boiler and certain necessary changes which had to be made. This letter became the basis of discussion, and, on December 21, 1945, another letter was written by the appellee to the appellant which made the total price $51,731, with, however, an increase if the material cost and labor rate should be later adjusted upward by the Government, or otherwise. On the strength of this letter, which was apparently accepted orally, the Heat & Power Corporation started to work, but wrote again on July 26, 1946, asking for a confirming order, and revising its quotations to consist of twelve items, making a total of $52,911, with escalator clauses on certain items. On August 7, 1946, Sherwood accepted the quotations of December 21, 1945, as revised by the letter of July 26, 1946, to a total of $52,911. The trial court's conclusion was that, without allowing the credit it did for failure to complete certain parts of the work properly, the proper claim under the contract was $54,685.83, the difference apparently being due to escalation. There is no dispute that Sherwood paid on account $15,000 on August 27, 1946, $22,000 on October 23, 1946, and $15,000 on December 21, 1946, making a total of $52,000 which had been paid by January 17, 1947, which was the date of the first note given to the Equitable Trust Company. It is apparent, therefore, that at that time, Sherwood had practically paid the full amount due on the original contract. If we add the full amount of the extras claimed, namely $14,316, the total would be only $69,001.83, and the balance, after deducting the payments already made, would be $17,001.83. This is all that could possibly have been owing to the Heat & Power Corporation at that time under any theory, and is very different from the $32,000 mentioned in the bill of particulars. Therefore, there must have been some other reason for the note. The explanation appears from the record. The note was made by Sherwood to the Heat & Power Corporation, and was endorsed individually by Mr. Mann, the

president of Sherwood, and Mr. Zink, the president of the Heat & Power Corporation. The Heat & Power Corporation had a contract to install machinery for the Foust Distilling Company of Glen Rock, Pennsylvania. This company was separate and distinct from the Sherwood Company, but Mr. Mann was president of both of them. Mr. Mann testified that the note was given by Sherwood as accommodation maker for the Foust Distilling Company. He said the Heat & Power Corporation received the entire proceeds, and credited them on the account of the Foust Distilling Company. Mr. Zink testified that the $25,000 was entered as a credit to the Foust Distilling Company, that the first payment of $5,000 was credited to the Foust Distilling Company, and the $10,000 paid at the time of default was credited to the Sherwood Distilling Company. Just what is meant by the statement that the $5,000 when paid was credited to the Foust Distilling Company is not clear, since Mr. Zink had previously testified that the entire amount of $25,000 was credited to the Foust Distilling Company when the note was discounted. There does not appear on any statement of the account between Sherwood and the Heat & Power Corporation, filed with the pleadings, or in the record, or anywhere else, that the $10,000 paid by Mr. Mann, or by Sherwood, when the note was finally paid off, was ever credited to Sherwood as testified by Mr. Zink. On the other hand, there is in the evidence a statement furnished April 9, 1947, from the Heat & Power Corporation to the Foust Distilling Company, which shows that on January 17, 1947, the Foust Distilling Company is credited with $24,830.55, with the entry "Cash 'Note'". The Foust Company is also charged on the same day with the interest on the note, $169.45, and, on March 17, 1947, when the note was reduced by $5,000, it is credited with this interest and charged with further interest of $202.22, and credited with the payment of this last amount. It is perfectly clear, therefore, from the accounts submitted from Mr. Zink's testimony, and from Mr. Mann's testimony, that

the borrowing of the $25,000 had nothing to do with the Sherwood contract, and none of the proceeds was credited to it. The note was intended to take care of something due by the Foust Distilling Company, and the proceeds were all credited to that company.

This suit is not brought against Sherwood as an accommodation maker on the note, and there is no count in the declaration, as amplified by the bill of particulars, which so states. The $10,000 has no place in this suit as a claim against Sherwood on the contract. Whether it could be made a claim in any other form of suit, or whether it is a claim against Foust, are questions not before us on this record. What is before us is whether it should be charged against Sherwood under the pleadings and evidence in this case, and it quite clearly appears that it should not.

The contract price, as we have stated, was $52,911, plus escalation on certain items. The court found the amount, including escalation, to be $54,685.83. There is some dispute about several of the increases made by the court in arriving at this figure, but we think, under our rule above quoted, we should leave these figures, with the exception of one, as the court found them. The one exception is an amount of $2,000 set out in the contract for the installation of meters, for which the court allowed $2,022.41. Apparently, however, these meters were not furnished, according to Mr. Zink's own testimony. He first said that the figure of $2,000 would be cut exactly in half. He then said that his company had billed Sherwood for $381.79 worth of meters that were furnished. He also said the final charge was less than $300, and then he further said that there was an item of $816 charged which takes in the meters and the recorders and the piping. Then he said there was a combination of items in connection with the meters of $1,206.41. The court added this $1,206.41 to the other figure of $816 to make a total of $2,022.41. There is no evidence to justify this whatsoever, and it appears, therefore, that the highest amount that the appellee proved in

connection with the meters was the combination item $1,206.41. If we allow this, which is somewhat doubtful in view of the testimony, the amount found by the trial court to be due under the contract will be reduced from $54,685.83 to $53,869.83. The court allowed a credit of $3,000 which, however, was not, according to its statement, for anything due because of the falure to furnish all the meters. The appellee did not appeal from the judgment, so there is no question before us of disallowing this credit. If we take this amount from the $53,869.83, there is due under the contract, without considering the extras, the sum of $50,869.83.

In order that the respective contentions about the extras may be better understood, we list here the twelve items in the contract of August 27, 1946, which make up the total of $52,911.

"1. 1—316 H.P. B. & W. Boiler—With Escalator Clause ..................... $10,670.00
2. Boiler Brick and Installation—With Escalator Clause ................... 3,800.00
3. Boiler Foundation ................. 1,170.00
4. Hauling and Erecting Boiler—With Escalator Clause .................... 5,325.00
5. Boiler Breeching—With Escalator Clause .......................... 1,260.00
6. Stoker Installation — With Escalator Clause .......................... 4,550.00
7. Cochrane Feed Water Heater ........ 3,200.00
8. Boiler Feed Pumps ............... 1,440.00
9. Copes Feed Water Regulator ........ 420.00
10. Stack, including Name—With Escalator Clause ...................... 12,076.00
11. Piping ........................... 7,000.00
12. Installation of Flow Meter C02 Recorder—Panel Board complete .......... 2,000.00"

The extras claimed were $14,316, but the court disallowed $4,109.93 of this amount. The $10,206.07 which was allowed apparently consisted of ten different items,

although the court made no specific finding of fact as to each of them. The contention of the appellant is that these extras were all included in items in the orginal contract, and therefore are not extras at all.

(1) The first of the extra items is changing old breeching and piping, $1,833.42. The appellant says this is part of Item 5 of the contract. In the letter of December 21, 1945, it was stated that for furnishing and installing the breeching between the boiler and the stack, there would be an additional charge of $1,080, with an alternate provision that if this breeching was to be extended so as to connect with the breeching of the existing boilers, there should be added the price of $63 per running foot, and this cost would be finally determined by the location of the new boiler. The location of the new boiler was decided upon, according to the drawing dated January 1, 1946, as immediately adjacent to the two old boilers, and, in the final contract letter of August 27, the cost was revised upward to $1,260. There seems to be some merit in the contention of appellant, but there is testimony on the part of the appellee of some change from the replacement of No. 2 boiler with the new one, and then No. 3 with a new one, and the making of necessary arrangements for additional breeching. In view of this evidence, we cannot say positively that the trial court was wrong in its conclusion, and, therefore, we will allow this item.

(2) The second item is replacing the old boiler breeching, $1,200. The appellant contends that this also comes under Item 5. The testimony, however, is that it was necessary to fabricate a temporary breeching in order that the old boilers might be kept operating while the new boiler was being installed. For the same reason we allowed the first item, we will allow this $1,200.

(3) The third item is for taking down old stack and breeching. The charge was $931.25, but the court disallowed $198.72 as an overcharge, and made its allowance $732.53. The appellant contends that the contractor, having made a contract to erect a boiler on the site where

an old steel stack stood, could not expect the owner to tear it down. However, Mr. Zink testified that it was not included in the original bid because Mr. Mann said he had a contractor in Westminster who would do that work, but subsequently asked appellee to take the stack down. The trial court apparently believed this, and, therefore, we will allow this $732.53.

(4) Steam and return piping to new dryer building and heating changes in old building. The trial court allowed $2,350. The appellant contends that this is part of Item 11 in the contract which is $7,000 for piping, and, in its brief, says that appellee knew that the new boiler was purchased primarily for the purpose of delivering steam to the new dryer building, that it knew, at the inception of the negotiations, that the steam to be delivered would necessitate certain piping for its return, or the return of its condensate, that no special provision was made for its exclusion from the contract, and, therefore, this was piping which was included in the $7,000 charge. The appellee, however, gave some testimony which indicated that it was later directed by Mr. Mann to do this work, and, while it seems rather extraordinary to allow it as an extra, we are unable to say that the trial court was clearly wrong in so doing. The trial judge, hearing the testimony and seeing the witnesses, gets so much better an understanding of the complicated facts of a case such as this that unless we can see that definite error was committed, we are unwilling to disturb his findings, even though they do not seem to be in accordance with what we would determine on the record. Under these circumstances, we will allow $2,350.

(5) The next item is steam and return piping to new dryer building and piping old boiler for heating old building. A charge was made and allowed for this of $2,540.63, but appellant says that this is part of an invoice rendered it on January 7, 1947, and was a repetition of the charges made in the invoice of December 3, 1946, which were those just discussed under (4). The

similarity in the description of these two items would indicate that this is true, and there is no explanation whatever that we have been able to find in the evidence, differentiating one from the other. In the absence of any such testimony, this item appears to be a duplication, and should not be allowed.

(6) Brooks Electrical Control substituted for hydraulic control, $135. This is claimed by appellant to be part of the stoker installation included in Item 6 of the contract. It appears that this stoker with Brooks Electrical Control was ordered, according to Mr. Zink's testimony, on April 8, 1946, which was months ahead of the written contract, so that this item was clearly included in the contract price.

(7) Sewer lines and exhaust from old buildings to feed water heater, $921.58. There is some testimony about this; apparently it was due to some breakdown in the existing lines, but the evidence is very sketchy, and it is impossible for us to say definitely what it was. The trial court, however, seemed to understand it, and disallowed part of it, so we will follow its conclusion and allow the $921.58.

(8) Steel platform for heater, $225. The testimony of Mr. Zink is that he had an oral contract with Sherwood about this, prior to August 27, 1946, the date of the confirming letter from Sherwood. It obviously should not have been allowed, as it came within Item 9 of the contract.

(9) Installation of Brooks Electrical Control, $197.69. It seems clear that this is part of the labor for the installation of the stoker under Item 6 of the contract, and should not have been allowed as an extra.

(10) For new exhaust line and operating boiler, $569.-25. This is a composite item for operating the installation to see if it worked. We think the allowance for this amount was justified for that purpose.

The total of these allowances we have made for extras is $7,606.78. If we add this to the amount we have heretofore found due under the contract, namely $50,869.83,

236

we get a total amount due by Sherwood to the appellee of $58,476.61. As there is no question that it has actually paid $57,000, this leaves a balance of $1,476.61 for which we will give judgment in favor of the appellee.

> *Judgment reversed and judgment entered in favor of the appellee against the appellant for $1,476.61 with interest from date, and costs of suit below, the costs in this court to be equally divided between the parties.*